The People of the State of Illinois, Plaintiff-Appellant, *v.* Osco Drug, Inc., Defendant-Appellee.

(No. 72-293;

Third District—July 3, 1973.

Herman Haase, Assistant State's Attorney, of Joliet, for the People.

Galowich, Galowich and McSteen, of Joliet, (Theodore A. Groenke, of counsel,) for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

On Nov. 18, 1971, a valid prescription for Butisol Sodium was presented to the prescription counter of the defendant's drug store in Joliet, Illinois. In the absence of the manager of the store Robert Curl, a registered pharmacist; Corliss Stoxen, an apprentice pharmacist registered in South Dakota and also in Indiana but not then registered in Illinois because he had been recently transferred from Indiana, sold the solution to an investigator for *$1.95*. Rather than proceed under the Pharmacy Practice Act (Ill. Rev. Stat. 1971, ch. 91, sec. 55), which then provided that any person violating the provisions of the Act could be fined not to exceed $200, the State's Attorney of Will County in April of 1972 secured a two-count indictment charging the defendant Osco Drug, Inc., in Count I with maintaining a store used for dispensing controlled substances in violation of section 406(a)(5) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, sec. 1406(a)(5)) (then a fine of not more than $10,000, now a Class A misdemeanor for the first offense), and in Count II with unlawful delivery of a controlled substance in violation of section 401(d) of the Controlled Substances Act (then a fine of not more than $15,000, now a Class 3 felony with same fine penalty). Motions to dismiss the indictment were heard and the trial judge entered an order dismissing the indictment. The People have appealed from that order.

■■■ The basic point is that Osco is a "practitioner" under the Controlled Substances Act. The definition of "practitioner" in section 1102 (hh) of the Act includes "* * * pharmacy or other person licensed, registered or otherwise lawfully permitted by the United States or this State to * * * dispense * * *." A "Person" is defined in section 1102(dd) to include a corporation. Osco was and is a licensed, lawful "practitioner" under the Act. Such a practitioner may have its agents act lawfully in its behalf in fulfilling its responsibilities as a practitioner. Section 1302(c) provides:

"The following persons need not register and may lawfully possess * * *:

(1) an agent or employee of any registered * * * dispenser * * * if he is acting in the usual course of his employer's lawful business or employment; * * *."

It would *follow that* Osco was lawfully authorized to dispense the drug in question pursuant to a written prescription.

Section 1312 of the Act regulates the "Dispensing of Controlled Substances"; it shows that other than in regard to the dispensing of Schedule V drugs (sec. 1212) or the dispensing of Schedule III (sec. 1208) and IV (sec. 1210) drugs pursuant to an oral prescription, it is not necessary that a registered individual "personally" dispense the drugs described in Schedules III through V as long as proper procedures are followed in performing the required acts on behalf of a lawfully registered practitioner. The drug here in question is allegedly a Schedule III controlled substance. In section 1312 the legislation makes a specific distinction between Schedule III, IV and V drugs dispensed pursuant to a written prescription as opposed to oral prescription. It provides in sub-paragraph (b) that "*a pharmacist, in good faith, may dispense* Schedule III, IV or V drugs upon a lawful *oral prescription; as opposed* to providing in sub-paragraph (a) that *a practitioner, in good faith, may dispense* * * * Schedule III, IV or V controlled substances * * * upon a *written prescription*. "Section 1312 then has a whole distinct subparagraph (c) dealing with the dispensing of Schedule V drugs including the requirement that Schedule V drugs may be dispensed "*only personally* by a pharmacist * * *"". "Only personally" states the legislative intent to have a registered pharmacist individually dispense such drugs. Similarly the provision dealing with a "pharmacist" dispensing Schedule III, IV, or V drugs on *oral* prescription, states the legislative intent to have a pharmacist perform the dispensing there in question.

██ On the other hand, there are no such requirements found in the legislative scheme for dispensing of Schedule III and IV drugs pursuant to a *written* prescription. The only requirement is that a "practitioner" dispense such drugs and defendant Osco was, in fact, a practitioner within the meaning of the Act and dispensed through its employee in a lawful manner the alleged Schedule III controlled substance pursuant to a lawful prescription.

The essence of the state legislative scheme is made even more clearly visible when compared with similar federal legislation regulating drug abuse which specifically requires the registration of pharmacies, but not of pharmacists employed in such pharmacies. (21 U.S.C. § 823(f).) The House report describing the legislation explains:

> "Pharmacies, as distinguished from pharmacists, when engaged in commercial activities will be registered under subsection (f), if they are authorized to dispense under the law of the state in which they regularly conduct business. The Committee inserted this language to make clear that only pharmacies and not pharmacists employed by them will be required to register. * * *"

*House Committee on Interstate and Foreign Commerce Report;* House Report No. 91-1444, 1970 U.S.C. Cong. and Adm. News, pp. 4566, 4608.

The People's sole contention is that "the legislature must have intended that when prescriptions for controlled substances were filled, they would be filled in accordance with the Pharmacy Practice Act. (Ill. Rev. Stat. 1971, ch. 91, sec. 55.6—15).

■■■ The Pharmacy Practice Act has its own penalty provisions and is a regulatory scheme providing for regulation by an administrative agency of the practice of pharmacy in the State of Illinois. Obviously, regulatory prescriptions of that Act are not automatically incorporated into another separate criminal statute. Thus, the indictment herein must stand or fall by the provisions of the Controlled Substances Act and the unauthorized conduct must be conduct unauthorized by that Act and not the Pharmacy Practice Act. Where two statutes are distinct in purpose, employ different remedies, and provide different penalties for offenses committed, they should not be so construed *in pari materia* as to employ the remedies of one for the prosecution of another. 50 Am.Jur. Statutes, sec. 420.

It is our opinion that the trial court had ample reason to dismiss the indictment for the reasons discussed above. Therefore, this court has no need to deal with the many other defective aspects urged by defendant.

The judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.